UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

        Plaintiff,

   v.

GEORGE WEGERS, et al.,

        Defendants.

CASE NO. CR05-0231C

ORDER

    This matter comes before the Court on the government's motion for inquiry into conflicts of interest arising from the Federal Public Defender's representation of defendant Glenn Merritt. (Dkt. No. 817.)  Having carefully considered the papers submitted by all parties, the allegations in the indictment, the Court's colloquy with the Defendant and counsel at a hearing, and all relevant facts and circumstances in this case, the Court finds and rules as follows.

**I.   RELEVANT FACTS AND ALLEGATIONS**

    Defendant Glenn William Merritt is one of the primary defendants in this case, and is named in twenty-one of the thirty-four counts in the Second Superseding Indictment ("SSI"), including four of the eleven alleged racketeering acts in Count 1. (SSI 9–13.)  Merritt is alleged to be the President of the Bandidos chapter in Bellingham, Washington, and the "regional officer for Washington and Montana, to

ORDER – 1

whom chapter presidents in those states reported." (*Id.* 5.) The indictment also details the structure, means, methods, and objectives of the Bandidos as a racketeering enterprise—allegations that must be proved by the government at trial to convict Merritt on the racketeering charges. (*Id.* 1–8.)

Merritt has been detained at the Federal Detention Center in SeaTac, Washington, since June 2005, as have several of his co-defendants. He has been represented since that time by Tim Lohraff and Paula Deutsch of the Federal Public Defender's ("FPD") Office in Seattle. In July 2005, a confidential informant ("CI") who was also detained at SeaTac allegedly provided information that is "relevant to establishing the existence of the RICO enterprise charged against Merritt and other defendants in Counts 1 and 2." (Mot. 4.) The CI was represented by Colin Fieman, also of the FPD, but in the Tacoma office. The FPD recognized that a potential conflict might arise if the CI testified at trial regarding the racketeering enterprise in which Merritt allegedly participated. (Opp'n 2.) The FPD nonetheless deemed it critical to the CI's interests to continue to represent him through his guilty plea in an unrelated case. (*Id.*) The FPD withdrew from the CI's representation in January. (Mot. 4–5.)

In response to inquiries from the United States Attorney's Office in December, the FPD stated that it had "walled off" AFPD Fieman from Merritt's counsel by instructing all involved to refrain from any discussion about the Bandidos case or the CI. (Opp'n 3.) The FPD also undertook its own internal analysis and determined that because the CI (1) had never spoken to Merritt, (2) had no information directly relevant to Merritt's activities or role in the racketeering enterprise, and therefore (3) could not give admissible evidence against Merritt, there was no actual conflict of interest. (*Id.*)

The United States Attorney was not satisfied with this conclusion and filed the present motion for further inquiry. Accordingly, on February 23, 2006, the Court held a hearing in this matter, attended by APFDs Lohraff, Deutsch, and Fieman, as well as defendant Glenn Merritt and the Assistant United States Attorney.

ORDER – 2

## II. Legal Analysis

### A. *Actual or Potential Conflicts of Interest*

Every criminal defendant has a Sixth Amendment right to effective assistance of counsel, which encompasses the right "to be represented by counsel whose loyalties are undivided" by competing duties to current or former clients. *United States v. Partin*, 601 F.2d 1000, 1006 (9th Cir. 1979) (citing *Glasser v. United States*, 315 U.S. 60, 70 (1942)). To be clear, this is not a case of joint or concurrent representation, requiring formal inquiry under Criminal Rule 44(c). However, the government argues that a potential conflict exists because "when the CI is called as a witness [in the Bandidos trial], Merritt's attorneys will be in the awkward position of having to cross examine a former client of their office." (Mot. 7.) It further argues that an actual conflict may have arisen if AFPD Fieman received confidences from the CI during his representation that are relevant to this case. (*Id.* 8.)

In determining whether a conflict exists requiring waiver, the Court turns to the Washington Rules of Professional Conduct ("WRPC"). *See Oxford Sys., Inc. v. CellPro, Inc.*, 45 F. Supp. 2d 1055, 1058 (W.D. Wa. 1999). Those rules govern an attorney's duty to avoid conflicts arising from the representation of a former client: under WRPC 1.9(b), an attorney is proscribed from using confidences or secrets received from a former client "to the disadvantage of the former client."[1] And WPRC 1.10 imputes to a conflict arising from a lawyer's representation of a former client to any other lawyer "associated" in the same firm.[2]

Thus, the Court must determine whether (1) the CI provided any confidences or secrets to AFPD Fieman that might be used to the CI's disadvantage in this case, or (2) if a potential conflict arises from

---

[1] The government does not argue, nor does the record suggest, that there is any relation between the CI's criminal case and this one. Thus, the prohibition in WRPC 1.9(a) against representation of a current client in a matter "substantially related" to a former client's case is inapplicable.

[2] The Court assumes, without deciding, that all Assistant Federal Public Defenders in the Western District of Washington are "associated" for purposes of imputed conflicts under WRPC 1.10.

ORDER – 3

the chance of the FPD cross-examining its former client at trial, and (3) if so, whether Merritt is fully informed of these potential conflicts and waives his right to unconflicted counsel.  First, the Court finds no evidence that an actual conflict has been created by the CI providing confidences to AFPD Fieman that may be relevant in this case.  In response to questioning, AFPD Fieman stated at the hearing that he received no confidences from the CI that would be relevant to Merritt's culpability in this prosecution—whether related to Merritt specifically or to the operation of the racketeering enterprise. *Cf. United States v. Jeffers*, 520 F.2d 1256, 1262 (9th Cir. 1975) (no actual conflict when counsel made no showing that confidences received precluded adequate cross-exam).  Equally important, all APFDs involved stated at the hearing that there have been no discussions whatsoever regarding the CI between Fieman and any AFPD associated with this case.

Nor does the Court discern a risk that APFD Fieman's former representation of the CI "divides [the FPD's] loyalties so that [it] is incapable of diligently representing" Merritt at trial.  *United States v. Rewald*, 889 F.2d 836, 858 (9th Cir. 1989).  Based on the AFPDs' statements at the hearing, the Court finds no indication that any of Fieman's FPD colleagues would pull punches during a cross-examination of the CI.  *Jeffers*, 530 F.2d at 1264 (identifying risk that "lawyer's pecuniary interest in possible future business [would] cause him to avoid vigorous cross-examination which might be embarrassing or offensive" to client).  Having also reviewed the government's *ex parte* submission of its investigators' notes from interviews with the CI, the Court is satisfied that no potential conflict is created by the content or admissibility of the CI's proffered information.

   B.   *Waiver of Potential Conflicts of Interest*

The government asserts that even if no actual or significant potential conflict exists, the mere appearance of impropriety would arise if an AFPD were to cross-examine the CI at trial.  As described above, the Court finds the risk of prejudice to defendant Merritt is exceedingly remote even if Merritt's current attorneys are required to cross-examine the CI.  Neither Merritt nor his attorneys have expressed any reservations about that scenario.  Nonetheless, the Court has inquired into Merritt's willingness to

ORDER – 4

1  knowingly and voluntarily waive his right to be free of potential conflicts, however remote they may be.

2  Accordingly, the Court engaged in a colloquy with Merritt at the hearing to determine
3  whether—based on the limited information he has about the CI's proffer—he understood the potential
4  conflict that might arise if his attorneys were to cross-examine the CI.  Based on his responses, the Court
5  is satisfied that Merritt understands this potential conflict and why it may result from his choice to retain
6  the FPD's office as counsel.  Merritt also stated that he has discussed these issues with counsel, and
7  declined the Court's invitation to appoint different counsel at no expense.  Having "actively participate[d]
8  in the waiver decision," the Court finds that Merritt has knowingly and intelligently waived his right to
9  unconflicted defense counsel with full awareness "of the relevant circumstances and the likely
10 consequences" thereof.  *United States v. Garcia*, 517 F.2d 272, 276 (5th Cir. 1975), *abrogated on other*
11 *grounds*, *Flanagan v. United States*, 465 U.S. 259, 263 n.2 (1984).

12 **III.   CONCLUSION AND ORDER**

13 Based on the foregoing factual findings and conclusions of law, the Court is satisfied that no
14 conflict will arise from the FPD's former representation of the CI.  The Court is further persuaded that,
15 whatever the likelihood that a potential conflict will manifest, Merritt has knowingly and voluntarily
16 waived his right choose alternate counsel.  Accordingly, the Court concludes that there is no basis for
17 disqualifying Merritt's current counsel in the FPD's office from further representation in this case.

18 SO ORDERED this 1st day of March, 2006.

UNITED STATES DISTRICT JUDGE

26 ORDER – 5